**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:19-cr-0053-003 |
| ) | |
| **NYRON ERICKSON,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**APPEARANCES:**

**DELIA L. SMITH, UNITED STATES ATTORNEY**
**EVERARD E. POTTER, ASSISTANT UNITED STATES ATTORNEY**
UNITED STATES ATTORNEY'S OFFICE
ST. THOMAS, U.S. VIRGIN ISLANDS
  *FOR THE UNITED STATES OF AMERICA*

**PAMELA L. COLON, ESQ.**
LAW OFFICES OF PAMELA L. COLON
ST. CROIX, U.S. VIRGIN ISLANDS
  *FOR DEFENDANT NYRON ERICKSON*

## MEMORANDUM OPINION

**Robert A. Molloy, Chief Judge**

**BEFORE THE COURT** is the United States' ("Government") Motion for Leave to Dismiss Indictment. (ECF No. 142.) Defendant Nyron Erickson does not object to the dismissal once the dismissal is with prejudice. (ECF Nos. 143, 144.) The issue before the Court, therefore, is whether the dismissal of the Indictment should be with or without prejudice. The Court held a hearing on the above-referenced motion on September 20, 2023. For the reasons stated herein, the Court will grant the Government's motion to dismiss, however, the Indictment will be dismissed with prejudice.

### I. FACTUAL BACKGROUND

On August 1, 2019, a grand jury returned an indictment charging Defendant Nyron Erickson ("Erickson") with one count of conspiracy to launder money internationally and

two counts of bulk cash smuggling. (ECF No. 1.)[1] Although the Court issued an arrest warrant the next day, the warrant could not be immediately executed given that Erickson is a citizen of, and resides in, the British Virgin Islands. Instead, Erickson willingly surrendered to the British Virgin Islands authorities on August 29, 2020. (ECF No. 62.) Erickson was then eventually extradited and placed in United States custody on February 27, 2023. (ECF No. 67.) Shortly after Erickson was taken into federal custody, he was arraigned, and a trial was set for April 24, 2023. (ECF No. 21.) However, due to the prosecutor's scheduling conflicts, the trial was rescheduled to August 21, 2023. (ECF No. 111.) Neither party made any additional requests for a continuance.

In anticipation of the expected trial, Erickson filed a series of motions in limine on August 11, 2023, raising various evidentiary issues.[2] On August 16, 2023, the Court held a status conference to address Erickson's motions and resolve any last-minute issues before trial. (ECF No. 139.) At the start of the status conference, both parties began by representing that they were prepared to proceed with the trial on August 21, 2023.[3] Given the parties' representations, the Court went on to address Erickson's pending motions.

While Erickson filed eight separate motions in limine addressing a variety of pretrial and evidentiary issues, only the motions challenging the admissibility of evidence are relevant for the purposes of this memorandum opinion. At trial, the Government intended to rely on only two pieces of factual evidence to prove Erickson was part of the alleged criminal conspiracy. The first piece of evidence involved prior statements made by one of Erickson's alleged co-conspirators, Tyrell Turnbull ("Turnbull"). The other piece of evidence was a screenshot from the phone of Akil Erickson, Nyron Erickson's codefendant, which allegedly contained text messages between the two defendants. The Court will discuss Erickson's challenge to each piece of evidence in turn.

---

[1] Nyron Erickson was charged with Count One (International Money Laundering), Count Two (Bulk Cash Smuggling), and Count Five (Bulk Cash Smuggling). *See* ECF No. 1. The Court dismissed the charges against Nyron Erickson's two codefendants with prejudice on June 3, 2020.

[2] Erickson filed eight motions in limine on August 11, 2023. *See* ECF Nos. 129, 130, 131, 132, 133, 134, 135, 136.

[3] While the Government acknowledged that it had some concerns about the evidence, counsel for the Government represented that it would not be filing a motion to continue and was prepared to proceed to trial.

During the status conference, Erickson first argued that the Court should prohibit the prosecution from introducing Turnbull's prior statements at trial. Erickson maintained that since Turnbull was not on the Government's pretrial witness list, and the Government had yet to locate Turnbull in the five years since this case began, it was safe to assume Turnbull would not be testifying at the upcoming trial. Given Turnbull's expected unavailability, Erickson reasoned that his Sixth Amendment right to conformation would be violated if Turnbull's prior statements were ultimately admitted without Turnbull present.[4]

While the Government initially responded by insisting that Turnbull's statements could come in as a statement against interest, the Government eventually conceded that the admissibility of Turnbull's statements was contingent on his availability to testify at trial.[5] Therefore, if the Government was unable to locate Turnbull in the few days between the status conference and the date of the trial, Turnbull's prior statements would be inadmissible. Given the theoretical possibility that the Government could still locate Turnbull before the start of trial, the Court deferred ruling on Erickson's motion.

Erickson next challenged the admissibility of the only other piece of evidence the Government intended to use to tie Erickson to the charged crimes—the screenshot of text messages allegedly between Nyron Erickson and Akil Erickson, obtained from Akil Erickson's cell phone. Erickson argued that the screenshot was inadmissible due to the lack of authentication. According to Erickson, although the phone appeared to indicate that the incriminating messages came from a "Nyronn," there was no evidence beyond the sender's name listed on the text message demonstrating that he sent the messages. Since Akil Erickson could have listed anyone's name as the contact associated with the sender's phone number, Erickson maintained that the screenshot alone was insufficient authentication to

---

[4] During the status conference, Erickson offered several other bases for exclusion, however, those arguments are not relevant for the purposes of this memorandum opinion.

[5] Once counsel for the Government realized that the concern was not whether Turnbull's statements were hearsay, but rather whether such statements would violate the Confrontation Clause if Turnbull was not available for cross-examination, the Government conceded that there was no way to avoid the Sixth Amendment issue if Turnbull was unavailable to testify at trial.

prove to a jury that the text messages from "Nyronn" were, in fact, sent by the defendant in this case.

Therefore, since the prosecution did not intend to call Akil Erickson to testify on how Nyron Erickson's contact information was entered into the phone,[6] nor did they intend to utilize some alternative form of authentication such as an affidavit from a phone company stating that the messages came from a number associated with a Nyron Erickson,[7] Erickson concluded that the Government lacked a sufficient means of authentication to introduce the screenshot at trial.

The Government pushed back against Erickson's argument by claiming that there was no need for the kind of authentication Erickson suggested because the text messages were effectively self-authenticating. The Government contended that modern cell phones can automatically create contact information for people sending a text message so that when a person receives the initial text message from an unknown sender, the text message will show up with the sender's name at the top of the message rather than just the sender's phone number. Put another way, the Government alleged that rather than Akil Erickson manually entering Nyron Erickson's contact information, either before or after Akil received the first message from that phone number, Akil's phone intuitively knew that the text message was from Nyron Erickson. Therefore, when Akil's phone received the first message from that number, that text message showed up as a message from "Nyronn"[8] as opposed to just a random cell phone number. Consequently, given the cell phone's purported automatic process for creating the sender's contact information, the Court, and ultimately the jury, could reliably conclude that messages from "Nyronn" were sent by the defendant, Nyron Erickson. The Government also insisted that the automatic contact creation process was of

---

[6] This assertion is buttressed by the fact that the Government did not list Akil Erickson as a prospective witness in its trial brief.

[7] Importantly, the screenshot of the text message did not include the sender's phone number, just the sender's name.

[8] The Court notes that the sender's name was spelled differently than the name of the Defendant. The name of the person who purportedly sent the text messages to Akil Erickson's phone was "Nyronn." The Defendant's first name is spelled "Nyron."

Case: 3:19-cr-00053-RAM-RM   Document #: 163   Filed: 01/08/24   Page 5 of 19

*United States v. Erickson*
Case No.: 3:19-cr-0053-003
Memorandum Opinion
Page 5 of 19

such common knowledge that the Court could take judicial notice of it. Accordingly, the Government asserted that neither Akil Erickson, an affidavit from a cell phone company, nor a phone expert who could explain the contact creation process was needed to prove the text messages from "Nyronn" were sent by Nyron Erickson.

After hearing the Government's argument, the Court noted that it was skeptical a typical cell phone was capable of automatically creating contact information in the way the Government alleged.[9] Moreover, even if the Government was correct about modern cellphone capabilities, the Court was even more dubious that such a process was of such common knowledge that no expert testimony was needed.[10] Therefore, since the deadline to disclose expert testimony had already passed, the chances of the Court allowing the Government to introduce the screenshot under its proffered theory of admissibility was exceedingly slim. Still, the Court explained that it would defer ruling on the admissibility of the screenshots until after it held a hearing on the contact creation process.

Thus, after the August 16th status conference, it appeared unlikely that any of the Government's factual evidence could be admitted against Erickson.

Seemingly recognizing the weakness of its case, the Government filed the instant motion the next day seeking leave to dismiss the Indictment against Nyron Erickson pursuant to Rule 48(a). (ECF No. 142.) The Government stated the reason for seeking a dismissal of the Indictment was that the "available admissible evidence would not permit a properly instructed jury to find beyond a reasonable doubt that the defendant is guilty of the charges alleged." (ECF No. 142.) While the Government was clear about its intent to dismiss the Indictment, its motion failed to indicate whether the requested dismissal was to be with or without prejudice. *See id.* The ambiguity as to the nature of the dismissal quickly caused confusion. To understand exactly why, a bit of additional background is necessary.

---

[9] While the Court acknowledges that certain messaging apps such as WhatsApp or GroupMe allow the message sender to enter his or her contact name so that the person receiving the message will see a name rather than a phone number when he or she opens the message, the Government clarified that no such messaging app was used in this case. Akil Erickson and "Nyronn" were utilizing ordinary SMS text messaging.

[10] The Court ultimately scheduled a pretrial hearing on August 21, 2023, to determine whether expert testimony would be necessary to admit the text messages on Akil Erickson's phone given that the Government did not intend to have Akil Erickson testify. The Trial was then rescheduled to commence the following day.

Before filing the instant motion, the Government's lead attorney in this case, Assistant United States Attorney Everard Potter, contacted Defense Counsel to ascertain whether Erickson objected to the Government's proposed dismissal. Defense Counsel responded by stating that Erickson had "no objection as long as the motion to dismiss and the order of dismissal was with prejudice." (ECF No. 143.) Attorney Potter stated that he "[a]greed, [the dismissal was] with prejudice." *Id.*

Following the parties' conversation, Attorney Potter filed the Government's Rule 48(a) motion seeking a dismissal a short time later. *See* ECF No. 142. Although the motion was silent as to whether the dismissal was with or without prejudice, the motion nevertheless stated, "Defense counsel ha[d] no objections to the Government's motion." *Id.*

Given the axiomatic rule that a governmental motion to dismiss that is silent as to whether the dismissal is to be "with prejudice," is presumed to be "without prejudice,"[11] Defense Counsel quickly contacted Attorney Potter to bring this concern to his attention. *See* ECF No. 144. While Attorney Potter initially insisted that a motion to dismiss that is silent as to whether the dismissal is with or without prejudice is presumed to be "with prejudice," Attorney Potter ultimately acknowledged that his understanding of the law was inaccurate. Accordingly, Attorney Potter agreed with defense counsel that the Government would file a motion clarifying that the dismissal would be with prejudice. *See* ECF No. 143. Despite the agreement, the Government never filed any such clarification. *See* ECF No. 144.

Shortly after the second phone call, Erickson filed an objection to the Government's motion clarifying his position in order to avoid the Court entering the dismissal on the mistaken belief that Erickson had no objection to the dismissal being entered without prejudice. (ECF No. 143.) Erickson's filing also stated that if the Government did not file the agreed-upon clarification by the close of business, he would insist on providing an additional

---

[11] *See United States v. Brown*, 425 F.3d 681, 681 (9th Cir. 2005) ("Dismissals by the government are generally presumed to be without prejudice, 'unless a contrary intent is clearly expressed.'") (citation omitted); *United States v. Arevalo-Garcia*, No. CR-22-00582-001, 2022 WL 2356763 at *1 (D. Ariz. June 30, 2022); *see also United States v. Galloway*, Crim. Act. No. 2012–020, 2013 WL 4712042 at *1 (D.V.I. Aug. 30, 2013) ("Rule 48(a) dismissals are customarily granted without prejudice…."); *United States v. Wecht*, No. CRIM. 06-0026, 2008 WL 65605, at *6 (W.D. Pa. Jan. 4, 2008) ("Ordinarily, a district court's dismissal of an indictment pursuant to a Rule 48(a) government motion to dismiss is without prejudice.").

objection to the motion to dismiss based on the Government's alleged bad faith. *See id.* Once the five o'clock hour came and went without a filing from the Government, Erickson filed his additional objections and requested a hearing to determine whether the dismissal should be with or without prejudice. *See* ECF No. 144.

Given the lack of clarity regarding the nature of the Government's proposed dismissal, the Court ordered the Government to file a response to Erickson's opposition to clarify whether the dismissal was to be with or without prejudice. *See* ECF No. 147. The Government provided its response on August 24, 2023. (ECF NO. 148.) The response acknowledged that when the Government notified Erickson of its intention to dismiss the Indictment, Erickson insisted that the dismissal was with prejudice. *See id.* Importantly, however, the Government now asserted that Erickson opposed the Government's proposed dismissal—implicitly suggesting the prosecution's original intent was for the dismissal to be without prejudice. *See id.* Therefore, despite the Government's representations to opposing counsel that the dismissal would be with prejudice, the Government now seemed to insinuate that it always intended for the dismissal to be without prejudice. Although the Government's response on August 24, 2023, never directly stated that it intended for the dismissal to be without prejudice, such a conclusion was buttressed by the fact that the rest of the response appeared to lay out the case law on why a governmental Rule 48 motion to dismiss is presumably without prejudice. *See id.*

Due to the ambiguity of the Government's August 24th response, the Court ordered the Government to "file a notice with the Court indicating clearly and unequivocally, whether the Government's motion to dismiss [was intended to be] with or without prejudice." (ECF No. 149.) The Government then finally addressed the question of the nature of the dismissal by stating that "the government's motion regarding dismissal is <u>without prejudice</u>." (ECF No. 151.) (emphasis in the original). Because of the seeming change in the Government's position, the Court granted Erickson's request to hold a hearing to determine whether the dismissal of the Indictment should be with or without prejudice. (ECF No. 152.)

At the evidentiary hearing, Attorney Potter represented that he did, indeed, tell Defense Counsel both before and after the Rule 48 motion was filed that the dismissal would

be with prejudice and that he would file a clarifying motion indicating as such. Additionally, Attorney Potter also admitted that when he filed the motion, his intent was for the dismissal of the Indictment to be ***"with prejudice."*** (emphasis added). In fact, Attorney Potter acknowledged he was still of the position that the dismissal was with prejudice when Defense Counsel called him again shortly after the motion was filed. Attorney Potter went on to explain that his position on dismissal shifted only after "management" informed him that they wanted the dismissal to be without prejudice.[12] Therefore, according to Attorney Potter's own telling, the Government only sought to change its position about the prejudicial effect of the dismissal several hours after the motion had been filed and after the Government had already represented to opposing counsel that the dismissal would be with prejudice.

As the hearing continued, the Court inquired as to whether the Government was seeking to dismiss the Indictment in bad faith. In particular, the Court asked the Government whether the prosecution would receive an unfair tactical advantage given that the prosecution waited to move for dismissal until after Erickson had already explained his defenses and the Court had made its preliminary rulings on the admissibility of the Government's evidence, and a dismissal without prejudice would allow the Government to better prepare for Erickson's defenses and cure any evidentiary deficiencies. The Government conceded that it would indeed receive a tactical advantage but that the advantage should not preclude the Government from obtaining a dismissal without prejudice. According to the Government, Rule 48 was designed to provide federal prosecutors with a tactical advantage. Therefore, the counsel for the Government concluded that even if the Government seeks to dismiss a case in an effort to achieve a strategic advantage at a later time, that fact alone should not preclude it from dismissing the Indictment without prejudice. From the Government's perspective, so long as the tactical advantage itself is not sought in bad faith, the dismissal should be without prejudice.

---

[12] Attorney Potter repeatedly stated to the Court that "management" subsequently informed him that the dismissal was to be without prejudice. Attorney Potter never clarified who those people in "management" were. The Court is of the opinion that Attorney Potter's repeated reference to "management" was intentionally vague so as to obfuscate precisely who gave him the subsequent directive.

After considering the parties' arguments, the Court took the matter under advisement and informed the parties that it would render it decision at a later date. Accordingly, the Court must now decide whether to dismiss the Indictment in this case with or without prejudice.

## II.     LEGAL STANDARD

Under Rule 48(a) of the Federal Rule of Criminal Procedure, "the government may, with leave of court, dismiss an indictment, information, or complaint." Fed R. Crim. P. 48(a). Dismissals initiated by the government pursuant to Rule 48(a) are presumed to be without prejudice and, therefore, the government may dismiss an indictment, and then later reindict the defendant on the same or similar charges. *See United States v. B.G.G.*, 53 F.4th 1353, 1363 (11th Cir. 2022); *United States v. Brown*, 425 F.3d 681, 682 (9th Cir. 2005).

Although the government must seek approval from the Court to dismiss an indictment without prejudice, the district court's authority to deny such a motion is circumscribed. *See In re Richards*, 213 F.3d 773, 786 (3d Cir. 2000) ("[C]ourts have generally viewed their role in granting leave to dismiss under 48(a) to be a limited one…."); *United States v. Bernard*, 42 F.4th 905, 908 (8th Cir. 2022); *B.G.G.*, 53 F.4th at 1361 ("The judiciary has a role to play when the government seeks to dismiss a prosecution—but it's a limited one."). Courts are only permitted to deny a Rule 48(a) motion where dismissal of the indictment would be "'clearly contrary to manifest public interest.'" *In re Richards*, 213 F.3d at 786; *Rinaldi v. United States*, 434 U.S. 22, 30 (1977) (quoting *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1985)); *see United States v. Martin*, 287 F.3d 609, 623 (7th Cir. 2002). Following the Supreme Court's decision in *Rinaldi*, the federal circuits have equated the Supreme Court's clearly contrary to manifest public interest standard to a finding of prosecutorial bad faith. *See United States v. Olson*, 846 F.2d 1103, 1114 (7th Cir. 1988); *United States v. Salinas*, 693 F.2d 348, 352 (5th Cir. 1982). Therefore, the relevant inquiry when determining the propriety of granting the government's requests for a dismissal is whether the government has made the motion to dismiss in "good faith" or in "bad faith" *See Rice v. Rivera*, 617 F.3d 802, 811 (4th Cir. 2010); *United States v. Sprofera*, 299 F.3d 725, 727 (8th Cir. 2002); *United States v. Smith*, 55 F.3d 157, 159 (4th Cir. 1995) ("a motion that is not

motivated by bad faith is not clearly contrary to manifest public interest") (citing *Rinaldi*, 434 U.S. at 30-31); *United States v. Hayden*, 860 F.2d 1483, 1488 (9th Cir. 1988); *Salinas*, 693 F.2d at 352.

"A court considering a Rule 48(a) motion to dismiss must begin with the presumption that the government acted in good faith." *United States v. Reyes*, 102 F.3d 1361, 1367 (5th Cir. 1996); *United States v. George*, Case No. 2:19-cr-00131, 2020 WL 6464187, at *2 (D. Vt. Nov. 3, 2020) (stating the same). While the government is entitled to a presumption of good faith when seeking to dismiss an indictment,[13] a criminal defendant can rebut the good faith presumption "by showing that the prosecution has sought dismissal in bad faith." *United States v. Lang*, Crim. No. 2015-0013, 2021 WL 2169513, at *1 (D.V.I. May 27, 2021) (citing *United States v. Etienne*, No. 2008-16 2009 WL 1404808, at *2 (D.V.I. May 15, 2009); *see also B.G.G.*, 53 F.4th at 1362; *Salinas*, 693 F.2d at 352. To prove bad faith, the defendant must show that the purpose of the government's motion for dismissal was to harass the defendant with repeated prosecutions or otherwise obtain an improper "tactical advantage."[14] If the defendant successfully rebuts the good faith presumption, the Court may deny the government's motion and dismiss the indictment with prejudice. *See In re United States*, 345 F.3d 450, 453 (7th Cir. 2003) ("the judge might rightly condition dismissal [under Rule 48]

---

[13] Under Rule 48, the prosecution bears the initial burden of explaining why dismissing the indictment without prejudice is in the public interest. *See United States v. James*, 861 F. Supp. 151, 155 (D.D.C. 1994). That explanation for dismissal is given the presumption that it is made in good faith. Only after the prosecution has satisfied its initial burden does the defendant then bear the burden of rebutting the presumption.

[14] *See In Re Richards*, 213 F.3d at 786-87 (noting prosecutorial harassment as a basis for denying the government's motion to dismiss without prejudice); *United States v. Dyal*, 868 F.2d 424, 429 (11th Cir. 1989) (defining bad faith as seeking dismissal "to achieve a tactical advantage in derogation of the defendant's rights or for the purpose of harassment"); *United States v. Salinas*, 693 F.2d 348 (5th Cir. 1982) (finding government's attempt to obtain an improper tactical advantage amounted to bad faith when seeking to dismiss due dissatisfaction with the state of the petit jury); *United States v. Mujahid*, 491 Fed. App'x 859, 860 (9th Cir. 2012) (noting that a prosecutor's desire to harass a defendant or gain a tactical advantage are the two primary bases for dismissal); *United States v. Pitts*, 331 F.R.D. 199, 203 (D.D.C. 2019) (stating that denial of Government's request for dismissal without prejudice was appropriate if the purpose of dismissal was to gain a tactical advantage); *United States v. Etienne*, No. 2008-16, 2009 WL 1404808, at *3 (D.V.I. May 15, 2009) (remarking that "prosecutorial gamesmanship" may indicate bad faith); *United States v. Karake*, 2007 WL 8045732, at *1 (D.D.C. Feb. 7, 2007); *Cf. United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984) (concluding dismissal *with prejudice* was appropriate where defendant was prepared for trial and prosecution sought dismissal merely to continue investigating the matter because he "was dissatisfied with the state of the investigation and the state the charges were in.").

on its being with prejudice"); *United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984); *United States v. Wecht*, No. Crim. 06-0026, 2008 WL 65605, at *6 (W.D. Pa. Jan. 4, 2008) ("[A] district court is authorized to dismiss with prejudice where it finds that dismissal without prejudice is contrary to the public interest or is necessary to protect a defendant against prosecutorial harassment of the sort Rule 48(a) is designed to prevent...."); *United States v. Rosenberg*, 108 F. Supp. 2d 191, 200 (S.D.N.Y. 2000); *United States v. Pitts*, 331 F.R.D. 199, 202 (D.D.C. 2019); *United States v. Poindexter*, 719 F. Supp. 6, 12 (D.D.C. 1989) (dismissing charges with prejudice where prosecution sought dismissal while keeping charges "in abeyance for an indefinite period of time in the hope or expectation that something will turn up"); *United States v. Rossoff*, 806 F. Supp. 200, 202-03 (C.D. Ill. 1992) (concluding that, under Rule 48(a), a court "may dismiss the indictment *with prejudice* if retrial is against the concept of fundamental fairness."); *United States v. Doody*, No. 01 CR. 1059, 2002 WL 562644, at *2 (Apr. 16, 2002); *Cf. B.G.G.*, 53 F.4th at 1362 ("a defendant can rebut the presumption of good faith 'in response to the government's motion to dismiss the original prosecution or via his own motion to dismiss a subsequent indictment.'") (quoting *Dyal*, 868 F.2d at 428).

Therefore, although the district courts' are limited in the scope of their discretion, Rule 48(a) does not "intend[] the trial court to serve merely as a rubber stamp for the prosecutor's decision." *United States v. Ammindown*, 497 F.2d 615, 622 (D.C. Cir. 1973). The district court maintains a duty to protect criminal defendants from harassment and maintain the integrity of the judicial system. *See In re Richards*, 213 F.3d at 489; *Wecht*, 2008 WL 65605, at *4.

### III. ANALYSIS

#### A. The Government Sought to Dismiss the Indictment in Bad Faith

After careful consideration and review, the Court finds that the Government's request for dismissal of the Indictment has been sought in bad faith in order to obtain an improper tactical advantage. As the Government conceded at the September 20th evidentiary hearing, the prosecution would undoubtedly receive an advantage by dismissing this case without prejudice just days before the start of trial. By waiting until the conclusion of the status conference to make the motion, the Government was given the opportunity to hear

Erickson's anticipated defenses and address any potential holes in its case-in-chief. The delayed filing of the Rule 48(a) motion also gave the Government the advantage of hearing how the Court intended to rule on the admissibility of the evidence, thereby allowing the Government to unfairly strengthen its case and cure any evidentiary deficiencies without being burdened by the previous trial deadlines.

A prime example of how a dismissal without prejudice would serve to benefit the Government can be seen when considering the potential admissibility of the screenshot of the text messages on Akil Erickson's phone. Absent testimony from Akil Erickson, whom the Government did not intend to call as a witness, the Government likely would have needed to obtain expert testimony before the messages could be admitted at trial. However, because the deadline to disclose expert witnesses had already expired,[15] the Government would have been precluded from introducing any such testimony if this case would have proceeded to trial as scheduled. On the other hand, if the case were dismissed without prejudice, the discovery deadlines would reset, allowing the Government to cure the self-inflicted disclosure error and ultimately elicit the desired expert testimony at a future trial. *See United States v. Madzarac*, Case No. 1:20-cr-194, 2023 WL 3452331, *5 (D.D.C. May 15, 2023) (finding the government's request for dismissal of an indictment "to cure its self-inflicted defects" an attempt to achieve a tactical advantage warranting dismissal with prejudice) (internal quotations and citations omitted).[16]

The Court finds that this type of potential tactical advantage apparent in the case at bar is analogous to ones found impermissible by other federal courts. In *United States v. Salinas*, the court of appeals found that the Government could not dismiss a case without

---

[15] The deadline to make expert disclosures had expired well before the August 16, 2023 status conference. *See* ECF No. 111.

[16] Even if the Court limited its findings and concluded that the only tactical advantage the Government sought by dismissing the case was the additional time needed to hopefully locate Tyrell Turnbull for a future trial, the Court would still conclude that seeking such an advantage at this juncture would amount to bad faith. As will be discussed in further detail below, the Government seems to have only realized it needed Turnbull available for trial after being made aware by the Court and opposing counsel at the August 16, 2023 status conference. Therefore, if the Court granted the dismissal without prejudice, the Government would gain an unfair tactical advantage by being able to cure an evidentiary deficiency it was seemingly unaware of. *See United States v. Pitts*, 331 F.R.D 199, 202-04 (D.D.C. 2019).

prejudice under Rule 48(a) where the basis for the dismissal was to obtain a more favorable jury. The Court explained that Rule 48(a) was not intended to be used "to gain a position of advantage or 'to escape from a position of less advantage in which the Government found itself as the result of its own election.'" *Salinas*, 693 F.2d at 353 (quoting *Parr v. United States*, 225 F.2d 329, 337 (5th Cir. 1955) (Cameron, J., dissenting), *aff'd on other grounds*, 351 U.S. 513, (1956). Similarly, in *United States v. Borges*, the district court found that the government's dismissal had to be with prejudice where the basis for dismissal was the unavailability of a critical witness who the Government hoped would eventually provide favorable testimony at some later date. *See* 153 F. Supp. 3d at 220. The Court explained that where a defendant was prepared to proceed to trial, indefinitely "hold[ing] charges in abeyance 'for an indefinite period of time in the hope or expectation that something will turn up to remove the complications'" amounted to the kind of prosecutorial harassment that is prohibited under Rule 48(a). *See id.* (quoting *United States v. Poindexter*, 719 F. Supp. 6, 11 (D.D.C. 1989)).

As is made clear by these cases, the Government may not use Rule 48(a) as a means of "dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution." *Ammidown*, 497 F.2d at 620; *United States v. Fields*, 475 F. Supp. 903, 908 (D.D.C. 1979) ("[T]he government is not free to indict, dismiss, and reindict solely to achieve a more favorable prosecutorial posture."). Despite the Government's assertion to the contrary, this type of intentional strategic maneuvering by the prosecution is precisely the type of conduct Rule 48(a) is intended to prevent. *See United States v. Pitts*, 331 F.R.D. 199, 204 (D.D.C. 2019) (citing *Ammidown*, 497 F.2d at 620); *Lang*, 2021 WL 2169513 at *2 (noting that "prosecutorial gamesmanship" or a desire to "obtain [an] improper tactical advantage" may preclude a dismissal without prejudice). Given that the Government conceded it intended to obtain a tactical advantage by dismissing the case, the presumption of prosecutorial good faith has been rebutted.[17]

---

[17] To the extent the Court needs to explicitly make a finding that the Defendant was prejudiced by the governmental conduct before dismissing the Indictment with prejudice, *see United States v. Goodson*, 204 F.3d 508, 515-16 (4th Cir. 2000), the Court finds that the above-mentioned tactical advantages the Government

*United States v. Erickson*
Case No.: 3:19-cr-0053-003
Memorandum Opinion
Page 14 of 19

Notwithstanding the concession that a dismissal without prejudice would provide the prosecution with a tactical advantage, the Government nevertheless maintains that the Indictment should still be dismissed without prejudice because any tactical advantage received was merely incidental. The Government argues the request for dismissal was made in good faith because the exclusive reason for seeking the dismissal was the Government's inability to locate its key material witness as opposed to the prosecution's lack of preparation leading up to trial.

To support this theory, the Government argued at the evidentiary hearing that it was aware prior to the August 16th status conference that the success of its case depended on the availability of Mr. Turnbull. Therefore, even though the Government had been unable to locate Turnbull for over five years, the Government claims it knowingly waited to file the request for dismissal until the last practicable moment in order to provide law enforcement as much time as possible to locate Mr. Turnbull before the start of trial. According to the Government, once it realized that Mr. Turnbull would indeed still be unavailable despite law enforcement's diligent efforts, the Government concluded that its remaining evidence was insufficient for a reasonable jury to find Erickson guilty of the crimes alleged. Given that courts in certain circumstances have found that witness unavailability is a permissible basis for dismissing an indictment without prejudice under Rule 48(a), the Government contends there is no bad faith present in this case despite the incidental advantages discussed above.[18]

As an initial matter, the circumstances here are distinguishable from those where courts have found that a dismissal without prejudice was permissible under Rule 48(a) due to witness unavailability. Unlike in those cases,[19] this was not a situation where a

---

could receive by dismissing the case without prejudice would ultimately prejudice Erickson's ability to present his defense at a future trial.

[18] *See e.g.*, *United States v. Rupp*, No. CR18-15, 2019 WL 93272, at *13 (N.D. Iowa Jan. 3, 2019) (discussing circumstances where the unavailability of a government witness was a legitimate basis for a Rule 48(a) dismissal).

[19] *See e.g.*, *United States v. Goodson*, 204 F.3d 508, 510-13 (4th Cir. 2000) (permitting dismissal without prejudice where key witness unexpectedly was unavailable to testify); *United States v. Palomares*, 119 F.3d 556, 558-60 (7th Cir. 1997) (concluding that dismissal without prejudice was permitted where Government had been unable to locate witness for over five months because defendant *was also likely unprepared to go to trial as well*); *United States v. Olson*, 846 F.2d 1103, 1114 (7th Cir. 1988) (dismissal without prejudice due to

government witness was expected to testify and then unexpectedly became unavailable come trial or a situation where the defendant was also unprepared for trial or otherwise consented to the dismissal. Erickson was prepared to proceed to trial in August and properly objected to a dismissal without prejudice. Additionally, Turnbull's unavailability was of no surprise to the Government. He was not listed as a witness, nor had he been located in more than five years. As such, the situation at bar is more akin to facts in *United States v. Derr*, where the court affirmed the district court's dismissal with prejudice because the defendant was ready for trial, and the prosecution sought a Rule 48(a) dismissal simply because it "was dissatisfied with the state of the investigation and the state the charges were in." 726 F.2d at 619.

More importantly, however, the Government's claim that the dismissal was based solely on witness unavailability is directly contradicted by the record.[20] Prior to the status conference on August 16, 2023, the Government provided no indication that it intended to call Tyrell Turnbull as a witness in Erickson's trial. The Government did not include Mr. Turnbull in the list of witnesses it provided to the Court on August 11, 2023. (ECF No. 128.) Turnbull's omission from the witness list a little over a week before trial surely indicates that the Government intended to proceed without Turnbull's testimony. This inference was reinforced by the Government's representation on August 16, 2023, just four days before trial, that it still intended to move forward with its case against Erickson despite not having yet found Turnbull. During the August 16, 2023 status conference, the Government initially attempted to argue that Turnbull's prior statements were still admissible despite Turnbull's unavailability. It was only after the Court highlighted the confrontation clause issue that the Government acknowledged, for the first time, that Turnbull's presence was necessary in order to introduce the Government's primary piece of evidence.

---

government witness unavailability was permissible due to defendant's failure to object to the dismissal); *United States v. Wallace*, 848 F.2d 1464, 1468-69 (9th Cir. 1988) (finding lower court's order granting the dismissal without prejudice was not in error where the defendant consented to the dismissal).

[20] As explained in *United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n*, "to gain the Court's favorable discretion, [the district court] should be satisfied that the reasons advanced for the proposed dismissal are substantial and the real grounds upon which the application is based." 228 F. Supp. 483, 486 (S.D.N.Y. 1964).

Nevertheless, the Government tries to suggest that it waited to file the motion requesting dismissal after the hearing on August 16, 2023, as opposed to August 11, 2023, when the Court asked if the Government was ready to proceed to trial, because the Government wanted to provide as much time as possible to determine Turnbull's availability before dismissing the case. The Court finds the Government's argument unavailing. The Government filed the motion seeking dismissal around mid-day on August 17, 2023. At the time of the filing, there were still at least five full days to locate Turnbull before he would need to testify. Therefore, if the Government genuinely intended to provide as much time as possible to locate the witness, the Government's attorney would have presumably waited until trial was literally about to begin. Given that the Government did not file the motion to dismiss on the literal eve of trial, the only difference between filing the motion on August 11, 2023—the day the Court asked the parties to indicate their readiness for trial—and August 17, 2023—the day the Government filed its motion to dismiss—was that by August 17, 2023, the Government had become aware of (1) Erickson's anticipated defenses, (2) its own self-inflicted evidentiary deficiencies, (3) and the need to obtain certain witness testimony if the case were to proceed to trial on August 22, 2023. The aforementioned is information that would give the Government an unfair tactical advantage if the case were to be dismissed without prejudice.

Moreover, if the Government's true reason for dismissal was law enforcement's failure to locate Turnbull, the Government presumably would have indicated as such in its motion or alternatively done what it routinely does when a material witness is unavailable—ask for a continuance due to witness unavailability. Were the need for Turnbull's testimony truly the only reason the Government could not proceed to trial on August 22, 2023, then requesting a continuance would have served the same purpose as a dismissal without the need to restart the entire criminal process.[21]

---

[21] To the extent that the Government may intend to argue on appeal that a Rule 48 dismissal was chosen in lieu of a request for a continuance because the Government needed more time than any reasonable continuance would allow to locate Turnbull, such an argument further supports the conclusion that the dismissal was sought in bad faith. This case has been open for more than five years. For almost three years, Erickson was detained, and up until the Court's most recent order, he was on house arrest with 24-hour GPS monitoring. *See* ECF Nos. 120, and 160. Given that the Government made clear they would likely immediately reindict Erickson were this

Accordingly, in light of the timing of the Government's motion for dismissal and Attorney Potter's unsupported post-hoc explanation for dismissal,[22] the Court finds that the Government's alleged good faith reason for dismissal was not the true reason for the dismissal. Instead, once the Government recognized the tactical advantage it could gain by dismissing the case without prejudice, it attempted to retroactively convert the motion to dismiss with prejudice into a dismissal without prejudice. Such conduct supports a finding of prosecutorial bad faith warranting a dismissal of the Indictment with prejudice.

### B. The Dismissal was Expressly Intended to be With Prejudice.

Even if there is insufficient evidence to conclude that the Government sought the Rule 48(a) dismissal in bad faith, the Court finds, in the alternative, that the Government intended to dismiss the Indictment with prejudice when it filed its motion on August 17, 2023.

While there is generally a presumption that a motion to dismiss that is silent as to prejudice is presumed to be without prejudice, the federal courts have clarified that the presumption can be overcome where "contrary intent is clearly expressed." *United States v. Brown*, 425 F.3d 681, 682 (9th Cir. 2005) (quoting *United States v. Matta*, 937 F.2d 567, 568 (11th Cir. 1991)); *Cf. United States v. Ortega-Alvarez*, 506 F.2d 455, 458 (2nd Cir. 1974) (regarding defendant's argument that the dismissal should have been with prejudice, the Court determined there was "nothing in the record which establishes that such an understanding was in fact reached."). Clear intent to dismiss the Indictment with prejudice is present here.

Both before and after the Rule 48(a) motion was filed, Attorney Potter expressly stated to opposing counsel that the dismissal was to be with prejudice. Moreover, Attorney Potter himself admitted at the evidentiary hearing that when he filed the motion seeking to

---

case to be dismissed without prejudice in order to avoid the statute of limitations from running out, Erickson would be subject to a further indefinite period of confinement as the Government continued to try and locate their witness. Without any assurances that the Government could eventually bring a case against Erickson in the reasonably near future, it appears likely that the Government's conduct would amount to prosecutorial harassment, further warranting a dismissal with prejudice.

[22] The Government's stated reason for dismissal was that there was insufficient evidence for a reasonable jury to find Erickson guilty of the crimes charged in the Indictment. Only at the evidentiary hearing did the Government try to claim that the sole basis for dismissal was Turnbull's unavailability.

dismiss the Indictment, his intent was that dismissal would be with prejudice. As noted above, Attorney Potter's position on the dismissal only changed after "management" later informed him that they wanted the dismissal to be without prejudice. However, Attorney Potter was the attorney of record in this case, not "management." It was Attorney Potter who drafted the Rule 48 motion, and it was Attorney Potter who ultimately filed the motion on behalf of the Government. As such, he cannot now claim that his belief was mistaken, as it is Attorney Potter's belief and intent that is relevant when determining the meaning of the motion. As an Assistant United States Attorney, Attorney Potter possessed the independent authority to dismiss the Indictment with prejudice and bind the government to that decision.[23] Given that Attorney Potter had the authority to dismiss the case with prejudice, the Court has no reason to disregard the agreement made by the parties, the representations Attorney Potter made on the Government's behalf, or his unequivocal intent when he filed the Rule 48 motion requesting a dismissal. Just as the Court must honor the Government's request when "the Government expressly states that it is seeking to dismiss without prejudice," so too must it respect the Government's request to dismiss with prejudice. The Court will not entertain the theory that "management" can retroactively alter a motion simply because it was unhappy with the decision made by the attorney of record.

Consequently, since the Court finds that the Government's express intent when it filed the motion was to dismiss the Indictment with prejudice, the Court will grant that request accordingly.

### IV. CONCLUSION

For the reasons stated above, the Court will dismiss the Indictment as to Nyron Ericson with prejudice. An accompanying order or even date will follow.

---

[23] Assistant United States Attorneys do not derive their power to prosecute from the United States Attorney but, instead, from the Attorney General. *See United States v. Moreau*, No. CR 07–0388, 2008 WL 4104131, at *11 (D.N.M. Apr. 3. 2008); *Cf. United States v. Donnell*, 557 Fed. App'x 335, 337 (5th Cir. 2014). Accordingly, an Assistant United States Attorney has an independent power to prosecute absent authorization by the United States Attorney. Because the power to prosecute includes the power to dismiss, and there is no statute limiting an Assistant United States Attorney's authority to dismiss the kind of indictment at issue here, Attorney Potter acted within his authority when filing the Rule 48 motion. *See United States v. Smith*, 55 F.3d 157, 158 (4th Cir. 1995) (discussing the power to dismiss); *United States v. Cowan*, 524, F.2d 504, 509 (5th Cir. 1975) (same); *see also United States v. Bakshinian*, 65 F. Supp. 2d 1104, 1106 (C.D. Cal. 1999) (noting "government prosecutors have the power to bind the sovereign.").

*United States v. Erickson*
Case No.: 3:19-cr-0053-003
Memorandum Opinion
Page 19 of 19

**Dated:** January 8, 2024               <u>*/s/ Robert A. Molloy*        </u>
                              **ROBERT A. MOLLOY**
                              **Chief Judge**